UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Dante' D. Gordon, | ) | CASE NO. 3:14 CV 2105 |
| Plaintiff, | ) ) | JUDGE DAVID A. KATZ |
| v. | ) ) | MEMORANDUM OPINION |
| Gary Mohr, *et al.*, | ) ) | |
| Defendants. | ) | |

*Pro se* plaintiff Dante' D. Gordon, a state prisoner currently incarcerated in the North Central Correctional Complex in Marion, Ohio (NCCC), has filed this federal civil rights action pursuant to 42 U.S.C. § 1983, alleging constitutional violations and supplemental state-law claims against twenty-three defendants. The defendants include the Director of the Ohio Department of Rehabilitation and Correction (ODRC), and employees and doctors at three Ohio prisons where the plaintiff has been incarcerated (the Trumbull Correctional Institution, the Richland Correctional Institution, and NCCC). The Court has granted the plaintiff leave to proceed *in forma pauperis* and has considered his complaint. For the reasons stated below, the complaint is dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

**Standard of Review**

Although *pro se* pleadings are liberally construed and held to less stringent standards than formal pleadings drafted by lawyers, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), district courts are required under 28 U.S.C. § 1915(e)(2)(B) to dismiss, at any time, any *in forma pauperis* action the court finds is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, 28 U.S.C. § 1915A requires district courts to dismiss before

service any complaint in which a prisoner seeks relief from officers or employees of a governmental entity that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune. *See Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010).

In order to survive dismissal, a *pro se* complaint must contain sufficient factual matter, accepted as true, to state claim to relief that is plausible on its face. *Id*. (holding that the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) governs dismissals under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A). The plaintiff's "[f]actual allegations must be enough to raise the right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. In considering whether a complaint is subject to dismissal, the court construes the complaint favorably to the plaintiff and accepts well-pled factual allegations as true. *See Arrow v. Federal Reserve Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004). The court, however, does not accept legal conclusions or unwarranted factual inferences. *See DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir.2007).

**Discussion and Analysis**

In his thirty-eight page single-spaced complaint, the plaintiff complains of numerous incidents that occurred while he was incarcerated in the Ohio prisons. He alleges his claims concern incidents that occurred over an eight-year time frame, "from 2006, up to 2014." (Complt., ¶3.) He complains he was denied appropriate medical treatment, harassed, retaliated and discriminated against, subjected to excessive force and unconditional conditions, and denied access to his mail, property, and legal materials.

The majority of the plaintiff's allegations pertain to conduct and incidents that occurred

between 2006 and September 2012, before the plaintiff was transferred (on September 5, 2012) to NCCC. (*See* Complaint ¶¶ 33-168.) Any § 1983 claim the plaintiff purports to assert arising from conduct and incidents occurring between 2006 and September 22, 2012, however, is barred by the statute of limitations.

The statute of limitations applicable to actions under § 1983 is the state statute of limitations applicable to personal injury actions under the law of the state in which the claims arose. *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Kuhnle Bros., v. County of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997)). All of the plaintiff's claims arose in Ohio, where the statute of limitations for personal injury actions is two years. *See* Ohio Rev. Code § 2305.10. Therefore, the plaintiff's federal claims under § 1983 are governed by a two-year statute. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989).

The plaintiff filed this action on September 22, 2014. Accordingly, any § 1983 claim the plaintiff purports to assert arising from the conduct and incidents he alleges in paragraphs 33-167 of his complaint – which all occurred before September 5, 2012, while the plaintiff was incarcerated in the Trumbull and Richland Correctional Institutions – is barred by the statute of limitations and must be dismissed under 28 U.S.C. §§1915(e) and 1915A. *See, e.g., LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097 (6th Cir. 1995) (holding that the bulk of a plaintiff's § 1983 claims which were based on discrete acts allegedly occurring more than two years before the plaintiff filed his lawsuit were barred by the statute of limitations).[1] This forecloses any and all § 1983 claims the plaintiff purports to allege in this case against the

---

[1] Although paragraphs 140 and 161 of the complaint refer to 2014 dates, they also do not support a timely claim as the conduct alleged in these paragraphs took place at the Richland Correctional Institution, where the plaintiff was incarcerated *prior* to September 2012.

following defendants: Margaret Bradshaw; Kelly Rose; Tim Milligan; Ronald Mapp; Adams; Eslick; Floyd; Freeman; Mona Parks; Drs. Stubill, Line, Fragumore, and Granson; and Lieutenant Nusbaum. The plaintiff alleges these defendants are officers or employees of the Trumbull and Richland Correctional Institutions and committed wrongful conduct prior to September 5, 2012.

The allegations in the plaintiff's complaint against the remaining defendants that are not time-barred on their face are only those that appear in paragraphs 169 through 226 and pertain to conduct occurring on or after September 22, 2012. The remaining defendants are: Gary Mohr, the Director of ODRC; ODRC Chief Inspector Gary Croft; Warden Neil Turner; Deputy Warden Joyce; the Management Training Corporation (MTC) (a private corporation under contract with ODRC to provide medical care to prisoners); and K. Morris, Harold May, and Doctors Jain Samay and Khaled Shahour (employees allegedly under contract with ODRC or MTC).

The plaintiff's allegations regarding his incarceration at NCCC are jumbled, rambling, and difficult to discern, and he does not specifically allege what constitutional violation or violations he contends each defendant committed. His allegations indicate that after he was transferred to NCCC, he repeatedly and consistently complained and filed grievances, or sought to file grievances, regarding a host of conduct and incidents taking place during his incarceration, but his grievances were all denied or he was impeded in his efforts to file them.

For instance, upon his arrival at NCCC, he complained his typewriter was wrongly confiscated as contraband. (Complt, ¶169.) He then complained he was wrongly accused by Major May of stealing a grievance form and was taken to segregation. (*Id*., ¶¶ 170-72.) He alleges "the administration is very racist" and he was thus made to cell with two other prisoners in segregation even though there was a "cell opened [with] a white prisoner" in it. (*Id*., ¶ 170). He complained that Major May, and Institutional Inspector K. Morris, retaliated against him for

4

"exercising his 1ˢᵗ amendment right, being an african american." (*Id*., ¶ 173.)

He complained on numerous occasions, from 2012 through 2014, about his legal mail and copies. He complained he was denied legal copies, overcharged for legal mail, and that his legal mail was opened and not promptly sent out. He complained he was denied entry into the law library by the librarian to work on his "habeas corpus." (*See id.,* ¶¶ 174, 180, 195, 202, 210, 211.) He also complained about the quality of the typewriters the librarian allowed him to use. (*Id*., ¶ 213). He complained he did not receive personal mail "out of retaliation for exercising his 1ˢᵗ amendment rights, being an african american." (*Id*., ¶ 194).

He filed numerous complaints regarding his medical care. He acknowledges he was seen and treated for complications with his kidney and other health conditions on many occasions, but he complains the treatment he received was inadequate. He appears to contend Doctors Samay and Shahrour provided him inadequate medical care for his kidney condition because he was denied stint surgery. He complained he was provided inappropriate medical care for a host of other conditions, including shortness of breath; head aches; congestion; blurred vision; knee, hip, neck, and stomach pain; difficulty walking; and for injuries he sustained after he was assaulted by a white prisoner in the library. (*See id*., ¶¶ 177, 191, 192, 199, 208, 212, 215, 218.) He complained he was over overcharged for medical treatment. (*Id*., ¶¶ 183, 187.)

In addition, he complained he was denied grievance forms and was harassed and retaliated against for exercising his 1ˢᵗ amendment rights. He alleges false conduct reports were issued against him for, among other things, having onions and tobacco (*id*., ¶¶ 200, 201) and for fighting during the incident in the library in which he claimed he was assaulted by a white prisoner. (*Id*., ¶ 216.)

The plaintiff also complained about other conduct of prison employees. He complained

that a corrections officer "used disrespectful language" toward him when "he was seeing if they called for [his] religious meal" (*Id*., ¶188); that Sargeant Ross rode a "gator vehicle" behind him, "jerking on the brakes [and] rev[v]ing the engine" when there was another lane open (*id*., ¶ 220); and that CO Elliot and Sargeant Ross "harass[ed him] about tucking in his shirt where there is no rule that state your shirt has to be tucked in on the yard." (*Id*., ¶ 221.)

Based on his laundry list of complaints, he generally alleges violations of the First, Fourth, Eighth, and Fourteenth Amendments. (*See* Complt., Counts I and II.)

The plaintiff has not alleged a cognizable federal claim under § 1983 against any defendant remaining in the case.[2]

The plaintiff has not alleged a cognizable claim under § 1983 against Gary Mohr, Gary Croft, Warden Turner, or Deputy Warden Joyce. The only discernible conduct the plaintiff alleges against these defendants is that they held supervisory positions and either denied, or did not act on, his many grievances. It is well-settled that supervisory liability may not be imposed under § 1983 on the basis of *respondeat superior*. To impose liability on a supervisor, there must be "active unconstitutional behavior," not a mere a failure to act. *Shehee v. Lutrell*, 199 F.3d 295, 3000 (6th Cir. 1999). Denying grievances, as the plaintiff alleges against these supervisory defendants, is *not* active unconstitutional conduct. *Id.*

The plaintiff has also failed to allege a viable claim against MTC. Private corporations like MTC which contract with prisons to provide services also cannot be held liable under § 1983 on the basis of *respondeat superior*. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th

---

[2]In order to state a claim for relief under § 1983, a plaintiff must allege he was deprived of a right secured by the Constitution or laws of the United States and that the deprivation was committed by a person acting under color of state law. *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).

Cir.1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). To impose liability on a contracting private entity, the plaintiff must demonstrate the entity itself had an unconstitutional policy or custom that caused the deprivation of his constitutional rights. *Id*. The plaintiff has not alleged *facts* plausibly suggesting MTC had an unconstitutional policy or custom.

Finally, the plaintiff has not alleged plausible claims against Doctors Samay and Khaled Shahour, and prison employees K. Morris and Harold May.

The plaintiff apparently asserts a claim under the Eighth Amendment against Doctors Shamay and Shahour. Failure to provide adequate medical treatment to a prisoner is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment only when it results from "deliberate indifference" to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish a constitutional claim, a plaintiff must show his medical condition posed a substantial risk of serious harm and that the defendant acted with deliberate indifference to that risk. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

"Deliberate indifference is characterized by obduracy or wantonness – it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012). Thus, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* In addition, "differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim." *Ward v. Smith*, 100 F.3d 958, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).

The Sixth Circuit has instructed:

> We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Westlake v. Lucas*, 527 F.2d 857, 860 n. 5 (6th Cir. 1976).

The plaintiff's complaint on its face indicates he was seen on many occasions by prison medical staff (including Doctors Samay and Shahour) for numerous complaints and was provided treatment, including for his kidney condition. In particular, he alleges doctors gave him the "option" of having his kidney removed but he refused that option. (*See* Complt., ¶ 218.) Although the plaintiff apparently contends the medical care he has been provided is inadequate and not the best treatment for his conditions, his allegations demonstrate – at the most – that he disagrees with the type of care he has been provided or that prison medical staff committed malpractice under state tort law. His allegations are insufficient to allege that Doctors Shamay and Shahour were "deliberately indifferent" to his medical needs within the meaning of the Eighth Amendment.

The discernible wrongful conduct the plaintiff alleges against K. Morris and Harold May is that they harassed and retaliated against him for filing grievances (including by pursuing false conduct charges against him) and that Morris impeded his access to grievance forms and/or the grievance process.

The plaintiff's allegations are insufficient to allege a plausible constitutional deprivation. The Sixth Circuit has held that prisoners do not have a constitutionally-protected right of unfettered access to prison grievances procedures. *See Walker v. Mich. Dept. of Corr.*, Case No. 04-1347, 2005 WL 742743, at *2 (6th Cir. April 1, 2005). "Consequently, denying access to a grievance process, in itself, is not a constitutional violation." *Paolone v. Altiere*, No. 4: 12 CV

1344, 2012 WL 5463871, at *3 (N.D. Ohio Nov. 8, 2012).

Although prisoners have a right under the First Amendment to file non-frivolous institutional grievances without retaliation, *Walker*, 2005 WL 742743, at *3, a plaintiff must establish three elements to demonstrate such a claim, that: (1) he engaged in protected conduct (*i.e.*, filed non-frivolous grievances); (2) an adverse action was taken against him that would "deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*, citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Even assuming the plaintiff has sufficiently alleged the first and third elements,[3] the allegations in his complaint on their face preclude the second element. "In order to constitute an adverse action, the prison officials' actions must have deterred a person of ordinary firmness from engaging in the filing of non-frivolous grievances." *Walker*, 2005 WL 742743, at *3. The plaintiff's complaint on its face indicates he was not deterred from engaging in protected conduct as he clearly alleges he continued to file many institutional grievances (non-frivolous or otherwise) during and after the alleged retaliatory conduct of defendants May and Morris. Accordingly, the plaintiff has not alleged a cognizable First Amendment based retaliation claim. *See Walker* (affirming dismissal of First Amendment based retaliation claim where the plaintiff admitted in his complaint that he attempted to file grievances during the time of the defendants' alleged retaliatory conduct). *See also Paolone v. Altiere*, 2012 WL 5463871.

To the extent the plaintiff purports to allege Morris and May retaliated against him or otherwise harassed him because he is African American, the plaintiff has also failed to allege a

---

[3] It is not clear, however, from the plaintiff's allegations whether he filed any "non-frivolous" grievances.

9

cognizable claim. The plaintiff sets forth conclusory allegations of racial animus in his complaint, but he does not set forth facts sufficient to a plausible inference that he was harassed or retaliated against by defendants Morris or May "because of" his race.

## Conclusion

In sum, for all of the reasons stated above, the plaintiff has failed to allege a discernible, plausible federal claim under § 1983 against any defendant named in the case. The Court declines to exercise supplemental jurisdiction over any state-law claim the plaintiff purports to allege in the absence of a viable federal claim.

Accordingly, the plaintiff's complaint is hereby dismissed under 28 U.S.C. §§1915(e)(2)(B) and 1915A. The Court further certifies, pursuant to 28 U.S.C. 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

     s/ *David A. Katz*
     DAVID A. KATZ
     U. S. DISTRICT JUDGE